IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLARD F. HENRY, | : | Case No. 2:10 CV 01056 |
| | : | |
| | : | Judge James L. Graham |
| Plaintiff, | : | Magistrate Mark R. Abel |
| | : | |
| v. | : | |
| | : | |
| CSX TRANSPORTATION, INC., | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |

<u>Opinion and Order</u>

This is a civil action brought by plaintiff Willard F. Henry against defendant CSX Transportation, Inc. Henry brings suit pursuant to the Federal Employers' Liability Act ("FELA"), claiming that he developed occupational bilateral carpal tunnel syndrome as a direct result of the defendant's negligence. Plaintiff seeks judgment against CSX in an amount not in excess of $150,000. This matter is now before the Court on the defendant's motion for summary judgment.

**I.       Background**

   **A.       Factual Allegations**

Henry, an Ohio resident, was first employed by CSX and its predecessors in 1980. (Pl. Depo. 41). Between 1980 and 1986, Henry had periodic gaps in his work with CSX due to furloughs and job layoffs. (Pl. Depo. 42-51). In 1986, Henry's job with CSX was abolished. (Pl. Depo. 44). He served in the Navy for ten years and worked as a prison guard for about eight years. (Pl. Depo 54-55). In 2004 or 2005, Henry returned to CSX as a trackman/laborer. (Pl.

Depo. 81).  In August 2006, Henry began working as a track inspector.  (Pl. Depo. 121).  Except for a brief period working on railroad bridges in 2008, Henry has continued to work as a track inspector.  (Pl. Depo. 125).

CSX is a corporation organized and existing under the laws of Virginia.  (Compl. ¶ 2).  During the times material to Henry's allegations, CSX was engaged in interstate commerce as a common carrier, operating a line and system of railroads in Pennsylvania, Maryland, West Virginia, and other states.  (Compl. ¶ 4).

Throughout his employment with CSX, plaintiff worked as a trackman in and around Cumberland, Maryland and Huntington, West Virginia. (Compl. ¶ 8).  As trackman, plaintiff's job consisted mostly of knocking anchors with a sledgehammer.  (Pl. Depo. 78).  During the course of his employment, and while acting within the scope of his duties as a trackman, Henry was exposed to occupational risk factors for carpal tunnel syndrome.  (Compl. ¶¶ 6; 8).  Such risk factors included, but were not limited to, "repetition, force, vibration and awkward wrist postures."  (Compl. ¶ 8).  Throughout his employment with CSX, Henry was engaged in "the furtherance of interstate commerce within the meaning of the F.E.L.A."  (Compl. ¶ 6).  In or about October 2008, Henry was diagnosed with occupational bilateral carpal tunnel syndrome, and required bilateral carpal tunnel release surgeries.  (Compl. ¶ 11).

### B.    Henry's Claims

Henry alleges that the onset of occupational bilateral carpal tunnel syndrome was caused, in whole or in part, by the "negligence, carelessness, and recklessness" of CSX.  (Compl. ¶¶ 9; 10).  In his complaint, Henry sets forth that the negligence of CSX consisted of: (1) failure to provide a safe place to work; (2) failure to provide a timely and adequate ergonomic program designed to prevent occupational carpal tunnel syndrome; (3) failure to comply with safety and

operating rules and regulations of CSX; (4) forcing plaintiff to work under hurried and/or awkward conditions; (5) negligence of CSX employees, agents, servants, and/or workmen; (6) negligence at law; and (7) failure to exercise due and adequate care under the circumstances including, but not limited to, a lack of adequate manpower. (Compl. ¶ 9). Henry specifically identifies the exposure to occupational bilateral carpal tunnel syndrome risk factors without an adequate ergonomic program and with inadequate manpower as the cause of his injuries. (Doc. 37).

In support of his claims, Henry has submitted a report by his liability expert, Dr. Michael Shinnick, in which Dr. Shinnick expresses his opinion that, in pertinent part, CSX "failed to act as a prudent employer [and] . . . failed to provide Mr. Henry with a safe place to work while he was performing his Maintenance of Way and track inspection duties." (Pl. Ex. A). Henry further supports his FELA liability claim with a submission from his orthopedic surgeon, Dr. C. Mitchell Fields, M.D., who operated on his hands. In his medical report, Dr. Fields expressed his opinion that Henry's carpal tunnel syndrome is "directly related to his course of employment." (Pl. Ex. B).

Henry claims that, as a result of defendant's negligence, he developed carpal tunnel syndrome, and had to undergo bilateral carpal tunnel release surgeries. (Doc. 37). Due to the surgeries, Henry was out of work for approximately four months and he claims damages for lost wages during that time period. (Doc. 37). Henry further contends that he may continue to require medical treatment for his condition, which will result in future necessary medical expenses, beyond that which he has already incurred as a result of defendant's negligence. (Compl. ¶ 13). He also asserts that he has sustained "pain, suffering, inconvenience, stress and a loss of enjoyment of life and may continued to suffer same for an indefinite period of time in the

future."  (Compl. ¶ 14).  Henry has demanded this court render judgment against CSX in an amount not in excess of $150,000.

       **C.**      **Procedural Posture**

      This case is now before the Court on CSX's motion for summary judgment.  CSX contends that it is entitled to summary judgment because Henry cannot produce sufficient evidence showing that CSX was negligent or that the purported negligence caused Henry's injury.

## II.    Standard of Review

    Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Longaberger Co. v. Kolt, 586 F.3d 459, 465 (6th Cir. 2009).  The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Walton v. Ford Motor Co., 424 F.3d 481, 485 (6th Cir. 2005).

    The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also Longaberger, 586 F.3d at 465.  "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment."  Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 702 (6th Cir. 2008) (quoting

Anderson, 477 U.S. at 248).  Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations.  Daugherty, 544 F.3d at 702; Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).  Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252; see Dominguez v. Corr. Med. Servs., 555 F.3d 543, 549 (6th Cir. 2009).

## III.    Discussion

### A.    The Federal Employers' Liability Act

A common carrier engaged in interstate commerce "shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ."  45 U.S.C. § 51(1).  The negligence upon which FELA liability is based is determined by the application of common law principles, as established and applied in federal courts.  Adams v. CSX Transp. Inc., 899 F.2d. 536, 539 (6th Cir. 1990).  As a result, in order to prevail the plaintiff

bringing a FELA claim must establish the traditional elements of common law negligence: duty, breach, foreseeability, and causation.  Id.

The duty incumbent upon railroads under FELA is to provide their employees with a reasonably safe workplace.  Id. at 836.  This does not mean eliminating all workplace hazards. Id.  Rather, the railroad must use ordinary care under the circumstances, or "do what a reasonably prudent person would have done under the circumstances to make the working environment safe."  Id. (citation omitted).

"A railroad breaches its duty to employees by failing to provide a safe working environment if it knew or should have known that it was not acting adequately to protect its employees."  Aparicio v. Norfolk & W. Ry. Co., 84 F.3d 803, 811 (6th Cir. 1996).  FELA liability may also be shown, as a matter of law, if the plaintiff proves that "the railroad company violated a safety statute that establishes an absolute duty on the railroad company."  Lewis v. CSX Transp. Inc., 778 F. Supp. 2d 821, 835 (S.D. Ohio 2011) (citing Borger v. CSX Transp. Inc., 571 F.3d 559, 563 (6th Cir. 2009) (internal quotations omitted)).

FELA imposes a relaxed standard of proof with respect to the element of causation. Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506 (1957).  The test is "whether employer negligence played any part, even the slightest, in producing the injury for which the plaintiff seeks recovery."  Id.

Finally, the defendant must also be able to foresee some sort of injury to the plaintiff in order to be found liable under FELA.  Adams, 899 F.2d. at 539.  Under FELA, an employer is not liable for breaching its duty to provide a safe work environment "if the employer had no reasonable way of knowing that potential hazards existed."  Gallick v. Baltimore & O.R.R., 372 U.S. 108, 117 (1963).

In order to present a prima facie case for liability under FELA, a plaintiff must:

> present *more than a scintilla of evidence* to prove that (1) an injury occurred while the plaintiff was working within the scope of his or her employment with the railroad, (2) the employment was in the furtherance of the railroad's interstate transportation business, (3) the employer railroad was negligent, and (4) the employer's negligence played some part in causing the injury for which compensation is sought under the act.

Aparicio v. Norfolk & W. Ry. Co., 84 F.3d 803, 810 (6th Cir. 1996).

**B.      CSX Theories for Summary Judgment**

CSX requests summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  CSX contends it is entitled to summary judgment because Henry cannot produce sufficient evidence showing that (1) CSX was negligent; or (2) that any purported negligence caused Henry's injuries.

In support of the argument that Henry has not produced sufficient evidence showing that CSX was negligent, CSX contends that Henry has merely testified that his normal work duties with CSX probably caused his carpal tunnel syndrome.  Merely showing that his injury was in some way related to his normal job duties, they argue, is not negligence.  In addition, CSX argues that Henry's liability witness only concludes that Henry "was exposed to 'risk factors' associated with carpal tunnel syndrome but not that the exposure was negligent or improper." (Doc. 34).  Reminding the Court that FELA is a negligence statute, as opposed to a work-related injury statute akin to workers compensation liability, CSX argues that it is not responsible for injuries caused by performing normal job duties.  CSX draws attention to Henry's deposition in which he testifies that he had no complaints about the tools that he was given as a track inspector for CSX, and that he felt they were adequate for the job for which they were designed.  (Pl. Depo. 140).  Defendant also cites to the fact that Henry made no formal complaints about the

working conditions he was exposed to during his employment at CSX.  (Pl. Depo. 153).  Henry does testify that he would have liked "to see more manpower come back," but does not think that the manpower issue had anything to do with his carpal tunnel syndrome.  (Pl. Depo. 154).  Finally, CSX draws attention to the testimony of Henry indicating that he does not know what CSX did wrong to cause his injury.  (Pl. Depo. 160).

CSX argues that, by doing nothing more than citing his job duties, Henry attempts to recover for work-relatedness, not negligence.  In sum, CSX contends that Henry has not produced evidenced on which a jury could reasonably find that it failed in its duty to maintain a reasonably safe workplace.

CSX also contends that, even if Henry could provide evidence showing negligence, he has not produced sufficient evidence that any purported negligence caused his injuries, as the statute requires.  CSX asserts that expert testimony is required to establish causation in this case, as the issue is outside the common knowledge and experience of the layperson.  See Moody v. Maine Cent. R.R. Co., 823 F.2d 693, 695-96 (1st Cir. 1987).  CSX contends that Henry has not, and cannot, produce any expert testimony that his carpal tunnel syndrome was caused by alleged negligence.  Specifically, "there is not evidence that using a sledge hammer caused Plaintiff's carpal tunnel syndrome."  (Doc. 34).  CSX argues that without expert testimony that negligence caused Henry's condition he has failed to prove an essential element of his FELA claim.  For this reason, CSX believes it is entitled to summary judgment.

C.    **Henry's Response**

In response to defendant's motion for summary judgment, Henry alleges that he was exposed to occupational risk factors for carpal tunnel syndrome "without an adequate ergonomic program" and "with inadequate manpower," which resulted in the development of his bilateral

carpal tunnel syndrome. (Pl. Opp. 3).  He cites to Dr. Michael D. Shinnick's expert testimony in support of this allegation.  In a report supplied by Dr. Shinnick, he outlines the foundation for his opinion that CSX "failed to provide the Plaintiff with a safe place to work."  (Pl. Ex. A).  This failure on the part of CSX, Henry argues, constitutes negligence under the FELA.  Furthermore, Henry cites to a report supplied by Dr. Charles M. Fields, his treating physician, which directly relates the onset of carpal tunnel syndrome to his work at CSX.  According to Henry, these two pieces of evidence are sufficient to establish a genuine issue of material fact with respect to negligence and causation, and therefore withstand defendant's summary judgment motion.

**D.    Analysis**

It is first necessary to clarify defendant's characterization of plaintiff's burden of proof at this stage in the litigation.  CSX cites to testimony by Henry in which he admits having no complaints about the tools and equipment that he was supplied with during his employment.  It also cites to testimony in which Henry identifies repetitive use of a sledgehammer as probably causing his carpal tunnel syndrome, and concedes that he does not know what CSX did wrong to cause his injury.  Using the plaintiff's inability to articulate the defendant's particular negligent conduct and the causal link between that conduct and an injury is insufficient to demonstrate that those elements could not reasonably be found to exist by a jury once all the evidence is considered.  Such testimony by the Plaintiff is not required to show that a material issue of fact exists with respect to these elements of FELA liability.  Moreover, the conclusion of causation is often outside the scope of common knowledge and expert testimony may be necessary for a party to establish a sufficient basis for it.  See Claar v. Burlington Northern R. Co., 29 F.3d 499, 504 (9th Cir. 1994); Moody v. Maine Cent. R. Co., 823 F.2d 693, 695 (1st Cir. 1987) (citing to W.P. Keeton, *The Law of Torts* 269 (5th ed. 1984)).  CSX itself makes the argument that this

9

case requires expert testimony to establish such issues, as they are outside the common knowledge and experience of the layperson.

With this in mind, the court turns to the two requirements necessary to establish a prima facie case for FELA liability that CSX asserts are absent.

### 1.    Negligence

CSX was subject to the duty to provide its employees with a reasonably safe workplace. Lewis v. CSX Transp. Inc., 778 F. Supp. 2d 821, 835 (S.D. Ohio 2011).  In other words, CSX had "to use ordinary care under the circumstances," or "do what a reasonably prudent person would have done under the circumstances to make the working environment safe."  Id. (quoting Van Gorder v. Grant Trunk W. R.R. Inc., 509 F.3d 265, 269 (6th Cir. 2007)).  A railroad breaches this duty if it does not provide a safe working environment to its employees and it knew, or should have known, it was not acting adequately to protect them.  Id.

In his deposition, Henry testifies that CSX was cutting corners, and "safety is a part of that."  (Pl. Depo. 154).  He also testifies that the company needs to "quit cutting manpower down," although he then states that he does not think the manpower issue had anything to do with his carpal tunnel syndrome.  (Pl. Depo. 154).  In his deposition, Henry states that, for many years working for CSX he did not wear gloves.  According to the deposition, however, he now does wear leather gloves that are provided by CSX.  (Pl. Depo 139).  He also testifies that, after returning to CSX as a trackman following the 1986-2005 period, CSX did not provide any safety training or refresher courses before he resumed work.  (Pl. Depo. 87).

In addition to his own testimony, Henry has produced an applied ergonomics report by Dr. Michael D. Shinnick, Director of Dynamics Research Group, Inc.  Dr. Shinnick's methodology in conducting an ergonomic and work safety analysis of Henry's injury consisted

of: (1) work task analysis; (2) assessment of hazard reduction; (3) assessment of medical surveillance; and (4) assessment of education and training.  (Pl. Ex. A).  In his assessment of Henry's work tasks, Dr. Shinnick references standard ergonomic assessment protocols, including checklists from the Association of American Railroads ("AAR") and the Occupational Safety and Health Administration ("OSHA").  He also draws upon sworn testimony of a variety of former and current CSX directors.

Dr. Shinnick concludes that CSX failed to provide Henry with a reasonably safe place to work.  In doing so, he begins with background on Henry's work history.  According to the report, Henry worked as a Trackman/Laborer on a four man Crossing Production Gang out of Richmond, Virginia in 2005.  He worked 12-14 hour shifts, five days per week.  While working as a Trackman/Laborer, Henry used hydraulic tools and hand tools, and would "lift, carry, or exert forces of 25 to 100 pounds on a frequent basis."  (Pl. Ex. A).  According to Shinnick's report, Henry estimated that he would use these tools or have material in his hands for an average of 8-9 hours out of a 10-hour shift.  His work tasks would require him to repetitively work with his hands in awkward postures while applying force and contact stress with his hand.  His hands would also absorb vibration while working outside during the entire shift, being exposed to extreme hot and cold temperatures.  Dr. Shinnick also explains that Henry stated that, "he has never been made aware of vibration retardant gloves."  (Id.).  "The only gloves that has ever been issued by CSXT are leather gloves."  (Id.).  The report goes on to catalogue, in detail, the tools and materials Henry used in his work, as well as the specific tasks in which they were employed.  Henry's tasks as Trackman/Laborer often "required him to repetitively work with his hands in awkward postures while applying force and contact stress with his hands, and absorbing vibration while working outside during the entire shift exposing him to extreme hot and cold

temperatures." (Id.).  Shinnick opines that this work history establishes that Henry was in fact exposed to well-established risk factors for the development of carpal tunnel syndrome while performing his job with CSX.  (Id.) ("[I]t is my opinion that in performing the duties of his job Mr. Henry was exposed to repeated ergonomic work injury risk factors to his upper extremities.").

The report continues with a brief history of developments in the industry relating to ergonomic hazards and risk factors.  As early as 1985, the AAR published a study on personnel injuries in railroad operations due to an increased incidence of disabling injuries and lost workdays due to hand tool injuries.  The study stated that "[i]t is important that the rail industry understand and begin to establish controls to prevent the carpal tunnel problem from reaching serious proportions."  (Pl. Ex. A).  In 1991, the AAR issued a final report comprehensively evaluating tools and tasks performed by trackmen, and an analysis of ergonomic risk factors, problems, and concerns.  In 1994, the AAR reviewed ergonomic programs at heavy industrial corporations and identified six elements of safety improvement processes that had been shown to level or reduce the number of workplace injury reports.  Those elements are: (1) define and design process; (2) worksite analysis and monitoring; (3) analysis of problems and solution options; (4) implementation of solutions; (5) training and education; and (6) medical management.  Dr. Shinnick then cites to a statement by OSHA in which it identifies that, "many employers have proven that establishing a systematic program to address such issues as repetition, excessive force, awkward postures and heavy lifting, results in fewer injuries to workers."  (Id.).  According to the report, "[s]ince the 1980s, ergonomists and heavy industry have put into place ergonomic safety programs to reduce and eliminate jobs and job activities that put undue stress on a worker's joints."  (Id.).

After outlining the railroad industry's identification of the relationship between exposure to these workplace factors and an increased risk of musculoskeletal disorders, and the successful implementation of a comprehensive safety improvement processes among heavy industry, Dr. Shinnick turns to CSX's own operations.  He concludes that, despite its knowledge of AAR and OSHA publications and research, "CSXT has failed to provide an effective ergonomic work safety program."  (Pl. Ex. A).  In a 2005 deposition, the CSX Director of Industrial Hygiene, Mark Badders, admitted that he had not put elements of a proactive, comprehensive ergonomic program into effect at CSX.

Dr. Shinnick's report also identifies what he considers to be failures of CSX in medical management.  In 2002, Heath Weldon, CSX Director of General claims, testified that the company maintains a claims database, but that he did not discuss the claims with the medical department, or request any assessment of potential risks to workers.  In July 2009, a former CSX Director of Safety admitted that a bonus pay system for managers was in effect at CSX, in which managers would be rewarded if they reached a certain number of days without a reported injury. According to Dr. Shinnick, this was a punitive system for employees reporting injuries (a finding that was also reported by the Federal Railroad Administration regarding CSX) and "is not consistent with a comprehensive corporate-wide ergonomic work safety program."  (Pl. Ex. A).

In his July 22, 2009 deposition, Dr. Todd Brown admitted that he did not receive regular data and information regarding employee injury claims of the musculoskeletal type and that "during his tenure at CSXT there was never a specific lifting limit for an employee of CSXT, in any particular craft."  (Pl. Ex. A).  This, Dr. Shinnick explains, is incompatible with a United States Class One Railroad Freight Industry Standard (requiring employees to obtain co-worker assistance or use an assistive device if a task requires more than fifty pounds of force).  The

report states that Dr. Brown admitted, "he has never found the job circumstances for anybody at CSXT to comport with what the literature and research conclude puts a person at risk for musculoskeletal disorders."  (Id.).  It further states that Dr. Brown claimed to have never been asked by CSX to compile any sort of written job descriptions of any jobs he looked at in the CSX system.  This, Dr. Shinnick opines, is a de facto violation of the Federal Railroad Administration code that requires CSX to provide its employees with a reasonably safe place to work because, without such documentation, it is not possible to ensure that CSX is providing its workers with safe work tasks and jobs.

The report also cites to an October 2000 report by Harvey A. Levine that outlines the elimination of 4,669 maintenance-of-way workers by CSX between the years 1986 and 1998. This report, Dr. Shinnick asserts, is consistent with Henry's observation of manpower reductions during his career in the CSX Maintenance-of-Way Department.

In light of the aforementioned testimony, and his own investigation, it is Dr. Shinnick's opinion that:

> (1) CSX did not conduct a systematic work task analysis of Mr. Henry's job to determine if performing his job duties posed any risk of injury or implement hazard prevention and control measures in Henry's job; (2) CSX failed to implement effective medical management programs to identify and monitor workers at risk for injury, or explore possible modifications of Henry's work tasks that may have reduced or prevented the development of his symptoms; and (3) CSX failed to train and educate Henry about the risk factors for developing carpal tunnel syndrome.

(Pl. Ex. A).  Ultimately, Dr. Shinnick concludes that CSX "knew how to, but chose not to, implement a proactive ergonomic work safety program," and thereby failed to act as a prudent employer and failed to provide Henry with a safe place to work.  (Id.).

The court concludes that Henry's testimony and Dr. Shinnick's expert opinion provide sufficient evidence from which a jury could reasonably conclude that CSX breached its duty under FELA to provide Henry with a reasonably safe workplace.

### 2.    Causation

Henry worked as a track laborer for four to five years in the time period between 1980 and 1986.  (Pl. Depo. 78)  During that time as a track laborer, his job consisted primarily of knocking anchors with a sledgehammer.  (Pl. Depo. 78).  When he returned to work with CSX in 2005, Henry worked 12-14 hour days, five days a week, as a trackman on crossing gang.  (Pl. Depo. 89-90).  Sledgehammers and power tools, much like jackhammers, were used in Henry's work during this time period.  (Pl. Depo 91).  Henry testified that he did not wear gloves during this time period, but that he had a tool in his hand 95 percent of the time.  (Pl. Depo. 92; 96).  This work continued into 2006, before Henry became a track inspector.  (Pl. Depo. 122).  From August 2006 until the present, except for a few months in mid-2008, Henry has worked as a track inspector for CSX. (Pl. Depo. 125).  As track inspector, Henry was out of his truck working on the rails roughly 25 percent of the time.  (Pl. Depo. 137).  He testified that the most difficult part of the job, with respect to his hands and wrists, as track inspector was the sledgehammer and the hydraulic wrench.  (Pl. Depo. 138).  It was during this time period that Henry first experienced symptoms with his hands, wrists and arms.  (Pl. Depo 139).

In his report, and as described above, Dr. Shinnick notes that it is a well-established and widely accepted conclusion that a relationship exists between the type of work Henry performed while working for CSX and the development of musculoskeletal disorders such as carpal tunnel syndrome.  (Pl. Ex. A).  Plaintiff has also submitted a medical report of his treating physician, Dr. C. Mitchell Fields, in support of his allegations.  (Pl. Ex. B).  Dr. Fields is the orthopedic

surgeon who operated on Henry's hands.  He supplied Henry with a report, which is included in his medical chart notes from February 4, 2009.  In that report, Dr. Fields opined that Henry's bilateral carpal tunnel syndrome is related to his work with CSX.  (Pl. Ex. B).  In the report, Dr. Mitchell writes:

> "Patient has been employed many years on the railroad.  Has been very physical in his nature of work which also requires repetitive motions of the hand and wrists.  He also has included the use of a jackhammer at times and with this long extensive history and numbness and tingling of his hands, I strongly feel that this is directly related to his course of employment."

As has been mentioned, the FELA imposes a relaxed standard of proof with respect to the element of causation.  Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 506 (1957).  If the plaintiff proves that the employer's negligence played even the slightest part in producing his injury, the causation element is established.  Id.

Despite the defendant's contention that Henry fails to create a genuine issue of fact with respect to the causation element by not being able to allege exactly what CSX did to cause his carpal tunnel syndrome himself, Dr. Field's medical report and Dr. Shinnick's ergonomic report provide sufficient evidence from which a jury could conclude that the negligence of CSX contributed to Henry's carpal tunnel syndrome.

## IV.   Conclusion

CSX has failed to show an absence of evidence supporting the breach and causation elements of Henry's FELA claim.  As such, defendant's motion for summary judgment (doc. 34) is DENIED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: April 19, 2012